UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALISHA R. SILBAUGH,<br><br>Plaintiff,<br><br>v.<br><br>PETE BUTTIGIEG, Secretary of the Department of Transportation,<br><br>Defendant. | Case No. C17-1759RSM<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Defendant Pete Buttigieg, Secretary of the U.S. Department of Transportation's Motion for Summary Judgment. Dkt. #65. Plaintiff Alisha Silbaugh has filed an opposition brief. Dkt. #74. The Court has determined that oral argument is unnecessary, and, for the reasons stated below, GRANTS this Motion.

## II.   FACTUAL BACKGROUND

Ms. Silbaugh, former employee of the Federal Aviation Administration ("FAA"), alleges discrimination, sexual harassment, and termination from her employment as a form of retaliation in violation of Title VII of the Civil Rights Act. *See* Dkt. #9. However, in response to the instant Motion, Plaintiff has withdrawn her claims of sex discrimination, race discrimination, disability

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

discrimination, and failure to accommodate her disability. Dkt. #74 at 12 and 24. Accordingly, the Court need only focus on the facts supporting her remaining sexual harassment and retaliation claims.

Ms. Silbaugh began working for the FAA in 2014, at the Flight Standards District Office ("FSDO") in Renton, Washington. Dkt. #68 ("Boler Decl."), ¶ 2. Her job title was Aviation Safety Assistant. *Id*. The FSDO is responsible for processing certifications for pilots, mechanics, repairmen, dispatchers, and parachute riggers. *Id*. Members of the public visit the FSDO to deal with various aviation-related certification issues. *Id*. As an Aviation Safety Assistant, Ms. Silbaugh was responsible for communicating with the public and providing clerical support to Aviation Safety Inspectors. *Id*. When she first started, she received training about Equal Employment Opportunity ("EEO") policies and she learned how to report EEO issues. Dkt. #66-2 ("Silbaugh Dep."), 33:19-34:13.

Kristofer Kern, an Aviation Safety Inspector, also worked at the FSDO. Aviation safety inspectors assign clerical work to Aviation Safety Assistants, but have "no authority to hire, fire, discipline, transfer ASAs, or write their performance appraisals, and they have no authority to alter their compensation or benefits." Boler Decl., ¶3. At the time, both Mr. Kern and Ms. Silbaugh reported to a supervisor named Ove Larsen. *Id*. at ¶ 3 and Ex. A.

The actual nature of the relationship between Mr. Kern and Ms. Silbaugh when they first started working together is unclear. According to initial statements Ms. Silbaugh made to an EEO investigator, Ms. Silbaugh and Mr. Kern had an office relationship that was full of inappropriate, sexualized statements and actions, while also characterized by Plaintiff as "romantic." *See* Dkt. #67-1. Ms. Silbaugh wrote that she considered Mr. Kern to be "a dear friend last year," with "flirtatious exchanges" that were "mostly mutual." *Id*. at 9. She wrote that "he and I had the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

same 'spark' that lit the fire." *Id*. At the same time, she accused him of sexual harassment. Ultimately, it is not material to ruling on this Motion whether their relationship was ever romantic or reciprocated.

According to Ms. Silbaugh's written submission to an FAA EEO investigator, by the spring of 2015, she and Mr. Kern made a mutual agreement that their "energetic romantic flair would come to an end." *Id.* at 1. She wrote that she "respected his decision to leave him [sic] alone," that he "attempted to make it appear that I was harassing him in the workplace," that she "refused to reciprocate his squirrelly behavior," and that she "became sexually frustrated." *Id*.

In a subsequent communication with the investigator, Ms. Silbaugh revealed that Mr. Kern raped her on October 9, 2014. Dkt. #67-2 at 10. According to Ms. Silbaugh's 2016 deposition testimony, on the day of the alleged rape both of them took annual leave, left work together in Mr. Kern's truck, drove to Ms. Silbaugh's home, and went inside, ostensibly to review a construction project Plaintiff was contemplating. Dkt. #66-1 ("EEO Dep."), 55:2-10, 173:17-21, 174:4-7, 176:5-20. Mr. Kern forced himself on her, penetrated her, but was interrupted by the sound of Ms. Silbaugh's husband's car door slamming outside. *Id.* at 177:2-11. After the encounter, she states she suffered confusion or "brainwashing" from Mr. Kern about whether the rape was consensual sex, but after learning more about the topic from the King County Sexual Assault Resource Center, she came to realize that she was in fact raped by this man. *See id.* at 179:14-180:16.

Two hours after the alleged rape, plaintiff met Mr. Kern at a local coffee shop where she states he "coached me into thinking the rape was consensual." Dkt. #67-2 at 10. She claims that the next day at work, Kern told her that if she told anyone about the rape, she would get what was

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

coming to her, and he physically forced her to smell the jeans he wore the day before. Dkt. #66-2 ("Silbaugh Dep"), 48:14-50:17.

Between October 2014 and March 2015, Ms. Silbaugh was interviewed in four EEO investigations. On October 31, 2014, Flight Standards Division program manager Jean Wollaston interviewed Ms. Silbaugh. Silbaugh Dep., Ex. 1. Prior to beginning the interview, Wollaston notified Ms. Silbaugh of her responsibility to "provide complete and truthful information" and that providing false information could lead to disciplinary action. *Id*. at 1–2. Ms. Silbaugh acknowledged this with her signature and her initials. *Id*. Wollaston specifically asked plaintiff if she had witnessed or personally experienced harassment, intimidation, or bullying by someone in the Seattle office. *Id*. at p. 3-4. She answered no. Plaintiff signed her statement, and also handwrote that she and other employees had received training on standards of conduct, the No FEAR Act, and civil rights issues, and "I expect someone to speak up if the individual/group is offended." *Id*.

On November 10, 2014, a manager from another group interviewed Ms. Silbaugh and others in response to a complaint by another employee that Mr. Kern (1) made a comment with a sexual connotation when plaintiff brought whipped cream and a pie to the office, and (2) physically gyrated his hips, mimicking intercourse, behind Ove Larsen's back without physically touching him. Silbaugh Dep., Ex. 2. Again, Ms. Silbaugh was informed and acknowledged that providing false information could be the basis for disciplinary action. *Id*. at 2. She requested and was given a union representative for the interview. *Id*. at 3. She stated she did not know who made the whipped cream comment, she did not think there was anything inappropriate about it, and she had never witnessed any behavior at the FSDO, towards her or anyone else, that she

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

would consider inappropriate.  *Id*.  In a subsequent deposition, she characterized this as giving inaccurate information.  Silbaugh Dep. at 112:20-113:5.

Later that month, Ms. Silbaugh was interviewed by FAA manager Jim Phoenix about a complaint by another coworker, Ronona Crowder-Woods, that Mr. Kern had made a joke to her and Silbaugh about threesomes; Silbaugh and Kern laughed about it, and Kern played the song "Fat Bottomed Girls" on his phone.  Dkt. #68-3 at 2.  Ms. Silbaugh was again notified and acknowledged that providing false information could form the basis for disciplinary action.  She denied that Kern had made any comment about threesomes and stated that the song was a ringtone on his phone and that she did not hear Crowder-Woods express offense.  *Id*. at 3-4.

Ms. Silbaugh was interviewed again on March 18, 2015, by FAA Special Agent Patti Lynn about the complaint by Crowder-Woods.  Silbaugh. Dep., Ex. 3.  She signed and initialed her statement, which included the sentence, "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me."  *Id*. at 1.  Ms. Silbaugh also stated that her statement was the truth to the best of her recollection.  *Id*. at 3.  In this statement, Ms. Silbaugh said that Kern had been watching a music video of "Fat Bottomed Girls," insisted that Crowder-Woods brought her complaint to obtain a professional advantage, wrote in three different places that Crowder-Woods was lying, stated that Crowder-Woods was "harassing me and Kris Kern," and wrote that Crowder-Woods had threatened the two of them.  *Id*. at 1-2.

On May 18, 2015, Mr. Kern came into supervisor Larsen's office, shut the door, and stated that he was trying to end a relationship with Ms. Silbaugh, she was not dealing with it, and she was "stalking" him by calling him at home at all hours.  Dkt. #66-3 at 9-11 ("Larsen Decl."), ¶ 4. Kern claimed that while they were in the public area of the FSDO, with customers nearby, Ms. Silbaugh grabbed his water bottle and placed it between her breasts and legs (with her feet up on

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

the counter while wearing a skirt), and said "if you want it come and get it." Dkt #68-4. Kern reported that Ms. Silbaugh appeared to be angry when she noticed that he had put his wedding ring back on his finger. *Id.*

After Kern complained about plaintiff on May 18, 2015, plaintiff came into Mr. Larsen's office, stated that she had noticed Kern had been in his office, asked to know what Kern wanted, and then stated that she had complaints about Kern. Larsen Decl. at ¶ 6. Larsen asked Ms. Silbaugh to prepare a written statement; plaintiff set forth two incidents.

First, she stated that on May 4, 2015, Kern said, "I really like brown. Brown is my favorite color," while plaintiff was wearing a brown dress. Silbaugh Dep., Ex. 4. Second, on May 6, 2015, plaintiff approached Mr. Kern's cubicle, and she and Kern discussed weight training when Kern suddenly picked plaintiff up. *Id.* Ms. Silbaugh wrote, "I then tried to pick him up and we laughed about it. I know it was inappropriate in response as I haven't spoken to [another co-worker who witnessed the incident] since." *Id.* When asked about this incident during her deposition, Ms. Silbaugh testified that what she wrote in her statement was "wrong" and that she did not try to pick up Kern and instead tried to push him away. Silbaugh Dep. at 141:22-144:20. Ms. Silbaugh did not report the rape at this time.

Mr. Kern's and Ms. Silbaugh's complaints were forwarded to the Regional Director, who then forwarded them to the Accountability Board ("AB"). On May 20, 2015, Gloria Van Brackle, the Director of the AB, who was located in Washington, D.C., notified the Regional Director that the brown dress comment and the mutual horseplay of picking each other up did not meet the criteria to become an AB matter. Boler Decl. at ¶ 9. The allegations were identified as an "other matter," and forwarded to FAA Labor and Employee Relations for review and possible corrective action. *Id.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

Management determined that the brown dress comment did not appear to have been objectively offensive to Ms. Silbaugh or unwelcome to her at the time it occurred. Boler Decl. at ¶ 10. Ove Larsen and Lana Boler (the Assistant Manager of the FSDO) conducted an investigatory interview with Mr. Kern about the picking up incident. *Id*. As a result, both Mr. Kern and Ms. Silbaugh were issued verbal and written counseling that their conduct violated the FAA's Standards of Conduct and advised that further incidents could result in discipline up to and including termination. Larsen Decl. at ¶ 13; Dkt #68-5.

The FAA also investigated Mr. Kern's complaint about the water bottle incident. Ms. Silbaugh was interviewed, and she had her union representative with her at her request. Boler Decl. at ¶ 11. After reviewing all the evidence, on June 19, 2015, Larsen issued plaintiff a letter of reprimand for the water bottle incident. Larsen Decl. at ¶ 14.

On June 9, 2015, Ms. Silbaugh emailed her supervisor with an email titled "clarification on my professional relationship with Kris" in which she requested greater involvement with support functions. Dkt. #68-8. Approximately two weeks later, after she received the letter of reprimand, Ms. Silbaugh emailed her supervisor again, noting that the duty calendar showed she was assigned to work with Kern the following day. *Id*. She wrote, "I honestly feel uncomfortable (as I'm sure he would be). It is understandable to show a preference as to whom he works with, so I am requesting further guidance on this matter." *Id*. By being assigned to work with Mr. Kern, Ms. Silbaugh would be processing reports and other paperwork he generated. Silbaugh Dep. at 40:12-41:1. After receiving the email, Boler and Larsen met with Ms. Silbaugh and discussed her concerns. Boler Decl. at ¶ 13. Ms. Silbaugh did not allege in her emails or in the meeting that Mr. Kern was continuing to harass her, and the FAA did not schedule her to work with Kern again. *Id*.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

Plaintiff first contacted an EEO counselor on June 24, 2015. Boodell Decl. at ¶ 2.

About six weeks after Ms. Silbaugh reported the brown dress comment and the picking up incident, on June 30, 2015, she visited Labor & Employee Relations Specialist Brian Meskell to ask about the notice of letter of reprimand that she had received. Dkt. #66-3 at 2–3 ("Meskell Decl."), ¶ 2. She revealed to Meskell that on May 4, 2015, Kern had placed his hands on her hips and thrust his crotch into her backside. *Id.* at ¶ 3. She told Meskell that she reported the hip thrust incident to Larsen on May 18, 2015, along with her brown dress comment and picking up complaints. *Id*. Plaintiff did not include the hip thrust incident in her statement of May 18, 2015, and Larsen denied that she told him about it. Larsen Decl. at ¶ 8; Silbaugh Dep., Ex. 4.

The FAA opened a new AB matter regarding Silbaugh's new allegations and launched an investigation. Meskell Decl. at ¶ 5. Because Ms. Silbaugh said that she had reported the hip thrust incident to Larsen when she complained to him on May 18, 2015, Larsen was added as a respondent to the AB complaint for "Management Failure to Report." Boler Decl. at ¶ 14. Management has an obligation to report harassing conduct, and if he had failed to report what plaintiff had told him, Larsen could face discipline up to and including discharge. *Id*.

The Accountability Board accepted for investigation Ms. Silbaugh's new complaint about Kern and conducted an investigation. Boler Decl. at ¶ 15. Ms. Silbaugh subsequently admitted that she had not previously told Larsen about the alleged hip thrust. She wrote in her signed statement, "I originally reported two of the three events to my supervisor while I was developing the composure to account for this incident." Dkt #68-9. Ms. Silbaugh also wrote that at the time of the incidents, she and Kern "made an agreement a month prior that our sexually-charged connection is officially over." *Id*. Ms. Silbaugh agreed later in her deposition that someone reading her statement could have interpreted it to mean there was a consensual relationship

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

between the two.  Silbaugh Dep. at 174:9-19.  Ultimately, the hip thrust allegation was not substantiated and the agency so informed plaintiff via a July 27, 2015, memorandum.  Silbaugh Dep., Ex. 11.  Although the investigation did not substantiate Ms. Silbaugh's allegation regarding the hip thrust, the agency prepared a letter to Kern reminding him of FAA's standards of conduct and directing him again to "cease and desist any contact with [Ms. Silbaugh] during duty hours other than official communication." Dkt #68-10.  The FAA was unable to give the letter to Kern because he resigned his employment with the FAA on July 26, 2015, effective immediately.  Boler Decl. at ¶ 16. On July 27, 2015, the same day she learned that Kern resigned, she reported to Lana Boler that Kern had raped her on October 9, 2014. Silbaugh Dep. at 184:12:14-17, 185:1-21.

On September 6, 2016, FAA deposed Ms. Silbaugh while investigating her EEO complaint.  When asked why she did not report to her management any of the allegedly harassing actions or comments by Kern except for three of them (the brown dress comment, picking her up, and later, the hip thrust), plaintiff replied, "I had a tendency to not be offended by the things Kristofer Kern said." EEO Dep. at 30:16-17.  Ms. Silbaugh stated she had repeatedly misled FAA investigators when they asked about her dealings with Kern in prior investigations because she was afraid of Kern and because she felt she had no credibility. EEO Dep. at 91:18-94:6, 172:3-6.

On January 9, 2017, Seattle FSDO Office Manager Lana Boler issued Ms. Silbaugh a notice of termination for "lack of candor" based on five "specifications." Dkt. #68-13.  These reasons for termination boil down to 1) on multiple occasions, explicitly denying any harassment from Mr. Kern and failing to disclose harassment to internal investigators that was later claimed to be true, and 2) admitting during the September 6 deposition that she had made false and misleading statements and lied to an EEO investigator about her relationship with Mr. Kern.  A lack of candor charge requires proof that (1) the employee gave incorrect or incomplete

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

information, and (2) that she did so knowingly. Boler Decl. at ¶ 21, Ex. P at 12. The notice of termination letter painstakingly walks through the factual and legal reasons for the termination. *See* Dkt. #68-13. In a key paragraph, the notice states "[y]our lack of candor has completely eroded my confidence in your ability to perform your duties at a satisfactory level," and "[y]ou have expressed no remorse for your inconsistent and contradictory statements and allegations. Rather you espouse nonsensical excuses and implausible rationalizations." *Id*. at 5.

Ms. Silbaugh, represented by counsel, responded to the proposed letter of removal. Boler Decl. at ¶ 22; Dkt. #68-14. She stated that she "answered the questions that were asked of me in the earlier investigation, and the fact that I went into more detail on my own EEO affidavit/case does not mean that I engaged in lack of candor." Dkt. #68-14 at 3. She indicated that she was not provided with deposition transcripts or given the opportunity to make the corrections at the closing of the September 6 deposition. *Id*. at 5. Contrary to this assertion, Defendant points out that the deposition transcript includes four pages of handwritten corrections provided by Ms. Silbaugh. *See* Dkt. #66-1 ("EEO Dep.") at 15-18.

Ms. Silbaugh also claimed she had not been provided with a copy of her October 31, 2014, statement, but Defendant argues she had been provided a copy, which plaintiff subsequently signed and added handwritten information. Dkt. #65 at 13 (citing Dkt #68-15). She also claimed she never got a chance to update her March 18, 2015, statement to investigator Lynn, but Defendant argues she did provide an additional statement to Lynn in December 2015. *Id*.

Ms. Silbaugh was issued a letter of removal on February 16, 2017. Dkt #68-15. The letter stated, "[d]uring the prior Agency investigations, you were not only silent about Mr. Kern's alleged inappropriate behavior, but you specifically denied any such behavior and vigorously defended Mr. Kern against accusations of improper conduct. If your later allegations to the EEO

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

investigator were true, the information you provided in earlier Agency investigations was incomplete and not truthful." *Id*. at 3.  The letter explained that Ms. Silbaugh's failure to provide complete and accurate information that Kern had been harassing and threatening her since October 2014 impeded the agency's ability "to have an accurate understanding of the work environment at the SEA-FSDO" and "prevented the agency from taking corrective action" against Kern in a timely manner.  *Id*. at 4.

Ms. Silbaugh subsequently appealed her dismissal to the Merit Systems Protection Board ("MSPB").  Boler Decl. at ¶ 24, Dkt #68-16.  The MSPB upheld her dismissal, held that the FAA had sustained all five specifications of lack of candor, and held that Ms. Silbaugh had not proven her affirmative defenses of discrimination, retaliation, or failure to accommodate.  *Id*.

This action followed.

### III.   DISCUSSION

**A.  Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

*Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Sexual Harassment Claim

As a threshold issue, Defendant attempts to dismiss Ms. Silbaugh's sexual harassment claim as untimely: "Plaintiff cannot establish her hostile work environment claim because she did not exhaust it in a timely manner." Dkt. #65 at 15.

Federal employees complaining of discrimination by a governmental agency "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter," 29 C.F.R. § 1614.105(a), and they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1). "Failure to comply with this regulation is fatal to a federal employee's discrimination claim." *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (quotation marks and citation omitted). To state a timely harassment claim, plaintiff must allege that at least one harassing act occurred within the 45-day period before she contacted an EEO counselor. *Amtrak v. Morgan*, 536 U.S. 101, 117 (2002).

A plaintiff satisfies the continuing violation doctrine when a she alleges a "series of related acts, one or more of which falls within the limitations period." *Fielder v. Ual Corp.*, 218 F.3d 973, 983 (9th Cir. 1999). Relying on this citation, Ms. Silbaugh argues that "Kern's sexual harassment spanned from the first week of Silbaugh's employment May 2015 complaints [sic]," and that "the sexual harassment continued after that" pointing only to "Kern gesturing to his

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

crotch to display his erection. (Silbaugh dep 2021 p187-189, 195)." Dkt. #74 at 7–8. In June of 2015, Plaintiff filed an EEO complaint regarding Kern's sexual harassment. Ms. Silbaugh then concludes that "[t]he record establishes that Plaintiff did file her complaint of sexual harassment with the EEO within 45 days of the latest incident in a 'series of related acts, one or more of which falls within the limitations period.'" *Id*. at 8.

On Reply, the United States points out that "Plaintiff confirmed in her deposition that the last allegedly harassing act occurred on May 6, 2015." Dkt. #75 at 2 (citing Silbaugh Dep. at 195:23-196:1). The United States argues Ms. Silbaugh has stated in deposition that she could not remember when the erection incident occurred, and that "Plaintiff's response omits the testimony that follows where she confirmed that all the harassing conduct occurred by May 6, 2015." *Id*. citing Silbaugh Dep. at 195:23-196:1). In addition, in her EEO complaint, Ms. Silbaugh wrote that the erection incident happened in March 2015 or before. Dkt. #67-3 at 14 ("Just before he went to training in Dallas in March.... He had an erection and looked embarrassed.").

Ms. Silbaugh's briefing on this dispositive issue is razor thin. Her counsel essentially points at a vague statement in Ms. Silbaugh's deposition, ignores documents that clarify dates, and waves his hands. Ms. Silbaugh's own statements in the record conclusively indicate she waited more than 45 days to contact an EEO counselor after the last incident of reported sexual harassment. Plaintiff's sexual harassment claim must therefore be dismissed as untimely.

However, even if the claim was not untimely, the Court would dismiss it. The record demonstrates that Mr. Kern, as an aviation safety inspector, had no authority to hire, fire, discipline, transfer, write performance appraisals, or alter compensation for Ms. Silbaugh. Both Mr. Kern and Ms. Silbaugh reported to the same supervisor. Accordingly, they were co-workers under existing federal law, and Defendant is only liable if it knew or should have known of the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 13

harassing conduct and failed to take reasonably prompt and adequate corrective action. *See, e.g., Swenson v. Potter,* 271 F.3d 1184, 1191-98 (9th Cir. 2001); *Nellams v. Pac. Mar. Ass'n*, 2018 U.S. Dist. 197066 (W.D. Wash. Nov. 19, 2018); *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2012) (supervisors must possess the authority "to take tangible employment actions against the victim" including authority to hire, fire, demote, promote, transfer, or discipline).

Even if Ms. Silbaugh's sexual harassment claims were reported in a timely fashion, the record demonstrates that Defendant did not know, and had no reasonable basis to know, about the alleged behavior. The Court must evaluate the reasonableness of the FAA's response based on what it knew or should have known at the time it acted. *See Campbell v. State Dep't of Educ.*, 892 F.3d 1005, 1018 (9th Cir. 2018) (explaining that courts "evaluate the reasonableness of an employer's corrective measures only from the perspective of what the employer knew or should have known at the time it acted" and affirming grant of summary judgment). As Defendant puts it, "plaintiff does not explain how the FAA should have known that Kern was allegedly harassing plaintiff despite her repeated and unequivocal denials." Dkt. #75 at 4. Once informed, it took reasonable and prompt corrective action that was delayed by Ms. Silbaugh's untruthfulness and eventually cut off by the Mr. Kern's resignation. Even if this claim did not suffer from the timeliness issue, the Court would dismiss it as a matter of law.

C. **Retaliation Claim**

Ms. Silbaugh pleads she "engaged in statutorily-protected activity by reporting her sexual harassment/sex discrimination to Defendant," and that this was "a substantial factor in Defendant's decision to terminate Plaintiff." Dkt. #9 at 5. She does not plead other sources of retaliation. In briefing she argues that she was retaliated against on the basis of her sexual harassment claims, but also on the basis of her now withdrawn claims of discrimination on the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14

basis of race, sex, and disability. *See* Dkt. #74 at 12. The standards for all of these retaliation claims are essentially the same.

"To make out a prima facie retaliation case, [the plaintiff has] to show that she engaged in protected activity, that she suffered a materially adverse action, and that there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). To establish a prima facie case of retaliation under the ADA/Rehabilitation Act, an employee must show that: "(1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). Once a prima facie case is established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. *Bergene v. Salt River Agr. Imp. & Power Dist. Project*, 272 F.3d 1136, 1141 (9th Cir. 2001).

Ms. Silbaugh admits "it is an undisputed fact that Plaintiff did not volunteer factual elements of her allegations of sexual harassment during the defendant's internal investigations, which she later divulged during her EEOC complaint." Dkt. #74 at 13. She essentially ignores the consequences of her misstatements, arguing, "[i]t is an undisputed fact that it was the Plaintiff's EEOC allegations and her testimony from the Defendant's deposition of the Plaintiff during the EEOC investigation which caused her termination. Had she not made the EEOC complaint, she would not have been terminated." Dkt. #74 at 21.

On Reply, Defendant argues that Ms. Silbaugh "does not dispute that she engaged in all of the conduct set forth in the letter proposing her termination" and that there is no disputed

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 15

material fact as to this claim. Dkt. #75 at 8. Defendant acknowledges that "filing a charge of discrimination and opposing discriminatory or harassing conduct is protected activity," but maintains that "lying to and intentionally misleading an EEO investigator as plaintiff did is not protected conduct." *Id*. at 10 (citing *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 891 (7th Cir. 2004)). Defendant also cites to Hellman v. Weisberg, 2007 U.S. Dist. LEXIS 89174, at * 12 (D. Ariz. Dec. 3, 2007) as a case that "rejected the suggestion that the retaliation provision of Title VII protects 'all conduct associated with an EEOC proceeding, including conduct that violates an employee's duty of … honesty.'" *Id*. at 10–11. In any event, Defendant argues that Ms. Silbaugh has failed to point to any retaliatory or discriminatory animus. *Id*. at 11.

Finally, Defendant points out that other allegedly retaliatory actions raised by Ms. Silbaugh in deposition and briefing, including a letter of reprimand for the water bottle incident, cannot form a basis for this claim because no adverse employment action occurred. Dkt #75 at 7 (citing Dkt #68-7, letter of reprimand stating it is intended to be "corrective in nature rather than punitive" and that it would be removed from her file after two years).

The Court finds that Ms. Silbaugh has failed to demonstrate a prima facie case of retaliation. Ms. Silbaugh may have engaged in a protected activity by participating in the EEO investigation. She certainly suffered an adverse employment action when she was terminated. However, she has not demonstrated on a prima facie level that her protected activity was the cause of her termination. Rather, it is undeniable from the record that her statements in the EEO investigation revealed she had lied previously to the FAA about a serious matter—as serious as the allegations she brings against Defendant in this case. She explicitly admits under oath that she misled EEO investigators. Ms. Silbaugh did not just omit information, she affirmatively denied harassment was occurring. While the Court is sympathetic to Ms. Silbaugh's view that

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 16

she had to hide her allegations of harassment and rape out of fear of Mr. Kern, such does not affect Defendant's liability for retaliation. The lies occurred prior to the protected activity and constitute a "legitimate, non-retaliatory reason" for the termination. Ms. Silbaugh has failed to present any evidence that this articulate reason is a pretext for retaliation. Ms. Silbaugh has withdrawn all of her underlying discrimination claims. There is simply no reasonable basis for the Court (or a future fact-finder) to believe that Defendant carried some discriminatory or retaliatory animus toward Ms. Silbaugh. Accordingly, dismissal of this claim is warranted as a matter of law.

## IV. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion for Summary Judgment, Dkt. #65, is GRANTED. All of Plaintiff's claims are DISMISSED. This case is CLOSED.

DATED this 12th day of August, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 17